# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FOREVER FENCING INC., et al.** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> **BOARD OF COUNTY COMMISSIONERS** ) <br> **OF LEAVENWORTH COUNTY, et al.** ) <br> ) <br> **Defendants.** ) <br> _____) | **CIVIL ACTION** <br><br> **No. 2:23-cv-2049** |

## MEMORANDUM AND ORDER

On February 7, 2023, Forever Fencing Inc., Raymond Reynolds and Lisa Reynolds filed suit against the Board of County Commissioners of Leavenworth County, Doug Smith in his official capacity as a member of the Board, and David Van Parys in his individual and official capacities as County Counselor.  Pursuant to 42 U.S.C. § 1983, plaintiffs allege that defendants violated their rights under the Commerce Clause and the Fourteenth Amendment, U.S. Const. amend. XIV, and that defendants conspired to deny them such rights.  This matter is before the Court on Defendants' Motion To Dismiss (Doc. #14) filed March 15, 2023.  For reasons stated below, the Court sustains the motion.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial

experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678.  Plaintiffs make a facially plausible claim when they plead factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged.  Id.  However, plaintiffs must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Plaintiffs' complaint alleges as follows:

Raymond and Lisa Reynolds own Forever Fencing, which they operate out of their home in Leavenworth County, Kansas.  Verified Petition For Damages And Injunctive Relief (Doc. #1) filed February 7, 2023 ¶¶ 1, 2, 11.  Forever Fencing engages in interstate commerce.  Id.  The Leavenworth County Board of Commissioners governs Leavenworth County.  Id. ¶ 2.  Smith is a commissioner on the Board, and Van Parys is County Counselor.  Id. ¶¶ 4, 5.

On September 26, 2021, Forever Fencing applied for a special use permit to operate a contractor's yard on plaintiffs' property.  Id. ¶ 16.  On November 11, 2021, the County Planning Commission held a hearing on the permit application and recommended that the County approve

it.  Id. ¶ 17.  During the hearing, the Commission did not discuss Forever Fencing's previous work for the County or any alleged liability to the County.  Id. ¶ 18.

On November 29, 2021, Van Parys sent a memorandum to the Board which detailed the County's experience with Forever Fencing.  Id. ¶ 19.  Specifically, Van Parys stated that in 2008, the County pre-paid Forever Fencing $33,186.60 to install fencing for a road improvement project. Exhibit A (Doc. #1-1).  According to Van Parys, Forever Fencing never completed the work, so the County completed the fencing without Forever Fencing.  Id.  Van Parys stated that Forever Fencing was insolvent and that the County did not attempt to recoup its pre-payment and left the matter "as a lesson learned."  Id.  Van Parys concluded that the statute of limitations on any claim against Forever Fencing had run and "[c]onsequently, any repayment would have to be voluntary on the part of Forever Fencing and that particular matter is not part of the special use permit application."  Id.  Van Parys emphasized, however, that the Board could "consider past actions and statements in determining the veracity of statements that Forever Fencing will comply with the conditions of any special use permit granted to it."  Id.  Van Parys concluded that in total, the County lost $68,868.00 due to the Forever Fencing's failure to complete the project.

On December 1, 2021, the Board held a hearing on Forever Fencing's permit application. Verified Petition For Damages And Injunctive Relief (Doc. #1) ¶ 22.  At the hearing, Van Parys reemphasized the content of his memorandum and suggested that before determining whether to grant the permit, the Board should consider plaintiffs' failure to complete the fencing project in 2008.  Id. ¶ 26.  The Board discussed requiring plaintiffs to repay the County, and Smith demanded that plaintiffs do so with interest.  Id. ¶¶ 28, 29.  Ultimately, the Board continued the hearing to consider the Van Parys memorandum and additional documents from plaintiffs' counsel.  Id. ¶ 33.

On December 22, 2021, the Board resumed the permit hearing.  Id. ¶ 36.  At the hearing,

a similarly situated individual or class of individuals, (3) plaintiffs' procedural and substantive due process claims fail because they have not alleged the deprivation of a property interest and (4) plaintiffs' conspiracy claim fails because they have not alleged the deprivation of a constitutional right.[2]

## I.     Commerce Clause

Plaintiffs allege that in violation of the dormant Commerce Clause, to obtain a special use permit, defendants required them to pay a tax which was not related to any benefit which the County provided.  Defendants argue that the alleged repayment condition was a fee, not a tax, and that under Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970), the Court must balance any burden on interstate commerce and the putative local benefits of the state action.  They argue that because plaintiffs have not alleged a burden on interstate commerce, their claim must fail under Pike.

The Commerce Clause provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations and among the several States." U.S. Const. art. I, § 8, cl. 3. While the Commerce Clause is more frequently invoked as authority for federal legislation, the so-called dormant Commerce Clause limits state legislation which adversely affects interstate commerce. See Hughes v. Oklahoma, 441 U.S. 322, 326 (1979).  The focus of a dormant Commerce Clause challenge is whether a state law improperly interferes with interstate commerce.  Direct Mktg. Ass'n v. Brohl, 814 F.3d 1129, 1135 (10th Cir. 2016); see W. Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192 (1994) ("Th[e] negative aspect of the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by

---

[2]     Defendants also seek legislative and qualified immunity for Smith and Van Parys. The Court need not reach these issues because it finds that plaintiffs have failed to state claims under the Commerce Clause and Fourteenth Amendment.

burdening out-of-state competitors.") (internal citations omitted). Plaintiffs may challenge state violations of the dormant Commerce Clause under Section 1983. Dennis v. Higgins, 498 U.S. 439, 440 (1991).

The Supreme Court has adapted its dormant Commerce Clause jurisprudence to review state taxes on interstate commerce. Direct Mktg. Ass'n, 814 F.3d at 1136. In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977), the Court found that a tax on interstate commercial activity is constitutional if it "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." Id. at 279. On the other hand, to determine whether a licensing fee violates the dormant Commerce Clause, the Tenth Circuit applies Pike. V-1 Oil Co. v. Utah State Dep't of Pub. Safety, 131 F.3d 1415, 1423–24 (10th Cir. 1997). Under Pike, in balancing the burden on interstate commerce against the local benefits of the fee in question, the Court must balance the following factors:

> (1) the nature of the putative local benefits advanced by the [requirement]; (2) the burden the [requirement] imposes on interstate commerce; (3) whether the burden is "clearly excessive in relation to" the local benefits; and (4) whether the local interests can be promoted as well with a lesser impact on interstate commerce.

Blue Circle Cement, Inc. v. Bd. of Cnty. Comm'rs of Rogers, 27 F.3d 1499, 1512 (10th Cir. 1994) (quoting Pike, 397 U.S. at 142). Under Pike, plaintiffs bear the burden of showing that the incidental burden on interstate commerce is excessive compared to the local interests to be promoted. Hughes, 441 U.S. at 336.

Defendants argue that the alleged repayment requirement was a fee, not a tax. Under Kansas law, the distinction between a fee and a tax does not depend upon its label, but on the nature and function of the charge. See Exec. Aircraft Consulting, Inc. v. City of Newton, 252 Kan. 421, Syl. ¶ 7, 845 P.2d 57 (1993). Accordingly, the Supreme Court of Kansas has held as follows:

> [A] tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. A fee is not a revenue measure, but a means of compensating the government for the cost of offering and regulating the special service, benefit, or privilege. Payment of a fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered.

Id. at 427, 845 P.2d at 62. Kansas courts have found that these definitions "reveal distinct contrasts between the two terms concerning who pays, what is collected, and what the money is used for." Heartland Apartment Ass'n, Inc. v. City of Mission, 51 Kan. App. 2d 699, 707, 352 P.3d 1073, 1079 (Kan. Ct. App. 2015).

Here, as a matter of law, the repayment condition was a fee. Plaintiffs allege that defendants demanded repayment in exchange for a special use permit, a privilege that is not automatically conferred upon the general public. The charge was voluntary because plaintiffs could avoid it by choosing not to take advantage of a special use permit. Plaintiffs have not alleged that the charge was a forced contribution to raise revenue for the maintenance of governmental service offered to the general public. Because the repayment charge was a fee, the Court must balance the burden on interstate commerce against the putative local benefits of the fee.

Defendants argue that plaintiffs' claim must fail the Pike balancing test because plaintiffs have not alleged any burden whatsoever on interstate commerce. Plaintiffs do not respond to this argument. They argue that the repayment fee "was only applied to" them, Verified Petition For Damages And Injunctive Relief (Doc. #1) ¶ 58, but the Commerce Clause "protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations." Exxon Corp. v. Governor of Md., 437 U.S. 117, 127–28 (1978). Accordingly, "[a]lthough evidence regarding a particular company may be suggestive, the benefit-to-burden calculation is based on the overall benefits and burdens that the statutory provision may create, not on the benefits and burdens with

respect to a particular company or transaction." Quik Payday, Inc. v. Stork, 549 F.3d 1302, 1309 (10th Cir. 2008) (citing Exxon Corp., 437 U.S. at 127–28). Plaintiffs have not alleged a burden on interstate commerce which "is clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142. The Court therefore sustains defendants' motion to dismiss plaintiffs' dormant Commerce Clause claim.

## II.     Fourteenth Amendment

Pursuant to Section 1983, plaintiffs allege that by conditioning a special use permit on payment of the fee, defendants violated their Fourteenth Amendment rights to equal protection and due process. Defendants argue that plaintiffs' equal protection claim fails because they have not identified a similarly situated individual or class of individuals and that their procedural and substantive due process claims fail because they have not alleged the deprivation of a property interest.

### A.     Equal Protection

Under a class-of-one theory, plaintiffs allege that defendants violated their right to equal protection by requiring them to pay $68,868.00 as a condition of a special use permit. The Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. At the heart of any equal protection claim must be an allegation of being treated differently than those similarly situated. Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). In addition, unless plaintiff alleges a violation of a fundamental right or discrimination against a suspect class, defendants only need a rational justification for the different treatment. See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (class-of-one must show that defendant intentionally treated him differently from others similarly situated with no rational

basis for difference in treatment).

To prevail on a class-of-one theory, plaintiffs must first establish that others, "similarly situated in every material respect," were treated differently. Jicarilla Apache Nation v. Rio Arriba Cnty., 440 F.3d 1202, 1210 (10th Cir. 2006). Plaintiffs must then show that the difference in treatment was without a rational basis, that is, that the government action was "irrational and abusive," id. at 1211, and "wholly unrelated to any legitimate state activity," Mimics, Inc. v. Vill. of Angel Fire, 394 F.3d 836, 849 (10th Cir. 2005). (quotation omitted).

The Tenth Circuit has "approached class-of-one claims with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting Jicarilla Apache Nation, 440 F.3d at 1209). With challenges to low-level government decision-making, these concerns are heightened because such decisions often involve a great deal of discretion. Id. Accordingly, the Tenth Circuit has required a "strict reading" of the "similarly situated in every material respect" element, which "is inevitably more demanding where a difference in treatment could legitimately be based on a number of factors." Id. at 1218.

In particular, the Tenth Circuit has noted that zoning decisions involve the discretionary application of various factors where "it is more likely that there are material distinctions between allegedly similarly situated parties, leading to a ready supply of rational and not wholly arbitrary reasons for differential treatment." Id. (internal quotations and citations omitted). Plaintiffs must therefore allege more than "other, unidentified properties [with] comparable or similar conditions." Id. at 1220 (internal quotations omitted); see also Heartland Biogas, LLC v. Bd. of Cnty. Commissioners of Weld Cnty., No. 16-CV-03183-RM-NYW, 2017 WL 3730997, at *17 (D. Colo. Aug. 30, 2017) (on motion to dismiss, plaintiff must identify specific examples of similarly

situated individuals and how they were treated differently; general allegations that others were treated differently will not suffice).

Defendants argue that plaintiffs fail to state a class-of-one equal protection claim because they have not identified a similarly situated individual or class of individuals, which received different treatment. Plaintiffs allege that they were similarly situated to all special use permit applicants who sought land use exceptions through the special use permit process. This argument misses the mark: the question is whether defendants treated plaintiffs differently from other applicants who had breached contractual obligations to the County and thus inflicted financial losses on the County.[3]

Aside from conclusory allegations that "other special use permit applicants" received different treatment, plaintiffs' complaint is devoid of specific factual allegations of how and when defendants gave differential treatment to similarly situated entities. Verified Petition For Damages And Injunctive Relief (Doc. #1) ¶ 69. Plaintiffs' allegations are therefore insufficient to support plaintiffs' class-of-one equal protection claim. See Kan. Penn Gambling, LLC, 656 F.3d at 1220 (dismissing plaintiff's class-of-one claim where complaint failed to allege specific facts identifying how defendants treated similarly situated entities differently, especially where complaint addresses "inherently subjective and individualized enforcement of health and safety regulations"). The Court therefore sustains defendants' motion to dismiss plaintiffs' equal protection claim.

### B.     Due Process

Plaintiffs allege that in violation of their procedural due process rights, (1) the County conditioned a special use permit on a tax which had no fiscal relation to the benefits given by the

---

[3] Plaintiffs do not allege that the County's position with regard to the fencing contract was unfounded. The Court therefore assumes that Forever Fencing did breach that contract and caused the County to sustain losses of $68,868.00.

County and was not rationally related to the values connected with the County and (2) Van Parys "injected himself into the adjudicative process by advocating against [plaintiffs] while also purporting to serve as a neutral counsel to the adjudicative body." Plaintiff's Response To Defendants' Motion To Dismiss And Memorandum In Support Of Motion To Dismiss (Doc. #26) filed April 26, 2023 at 16. Plaintiffs further allege that the County violated their substantive due process rights.[4] Defendants argue that plaintiffs' due process claims fail because they have not alleged a deprivation of property.

The Fourteenth Amendment prohibits any state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Accordingly, to prevail on either a procedural or substantive due process claim, plaintiffs must allege that defendants deprived them of a protectible property interest.[5] See Hyde Park Co. v. Santa Fe City Council, 226 F.3d 1207, 1210 (10th Cir. 2000); see also Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006) ("A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered."). In the context of a procedural due process claim, plaintiffs are constitutionally entitled to an appropriate level of process only after they first demonstrate the existence and deprivation of a protected property interest. See Teigen v. Renfrow, 511 F.3d 1072, 1078 (10th Cir. 2007).

Plaintiffs assert that by imposing the fee, the County deprived them of money. Plaintiffs'

---

[4] Plaintiffs' complaint and response brief do not explain their substantive due process claim. Naked assertions of legal claims, without factual elaboration, will not stand. Therefore, the Court need not address this theory of liability.

[5] Plaintiffs do not argue that defendants deprived them of a constitutionally cognizable liberty interest.

Response To Defendants' Motion To Dismiss And Memorandum In Support Of Motion To Dismiss (Doc. #26) filed April 26, 2023 at 15.[6] Although plaintiffs had a protectible property interest in their money, they have not alleged a deprivation of such money. In fact, plaintiffs expressly allege that they did not pay the fee, which is why the County has refused to grant the special use permit. Because plaintiffs have not alleged a deprivation of money, their substantive and procedural due process claims fail as a matter of law. See Teigen, 511 F.3d at 1078 (affirming dismissal of due process claim where complaint did not allege deprivation of protectible property interest).

## III.    Conspiracy

Pursuant to Section 1983, plaintiffs assert that Smith and Van Parys conspired to deprive them of their rights under the Commerce Clause and Fourteenth Amendment. To succeed on a conspiracy claim under Section 1983, plaintiff must allege (1) an actual deprivation of a constitutional right, (2) a combination of two or more persons acting in concert and (3) a meeting of the minds, an agreement among defendants or a general conspiratorial objective. Brooks v. Gaenzle, 614 F.3d 1213, 1227–28 (10th Cir. 2010). Plaintiffs have not alleged an actual deprivation of a constitutional right under the Commerce Clause or the Fourteenth Amendment. The Court therefore dismisses plaintiffs' Section 1983 conspiracy claim.

**IT IS THERFORE ORDERED** that Defendants' Motion To Dismiss (Doc. #14) filed March 15, 2023 is hereby **SUSTAINED.**  All claims are dismissed, and the Clerk of the Court

---

[6] Plaintiffs argue that by conditioning issuance of a special use permit on payment of the fee, defendants have deprived them of money which they would have to pay to satisfy that condition. See Plaintiffs' Response To Defendant's Motion To Dismiss And Memorandum In Support Of Motion To Dismiss (Doc. #26) filed April 26, 2023 at 15 ("[T]he main thrust of the Fourteenth Amendment Due Process Clause Claim need not rely on substantive due process because fee exactions and taxation are the deprivation of property, i.e. money."). Such an allegation is not sufficient to establish an actual deprivation of money.

-12-

shall enter judgment accordingly.

Dated this 10th day of July, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge